UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK R. WINKLE,

    Plaintiff,

v.

COLLEEN RUGGIERI, *et al.*,

    Defendants.

Case No. 2:12-CV-01079
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff, Mark R. Winkle, brings this action against various faculty members and employees of the Ohio University ("OU"). Plaintiff alleges violations of his First Amendment right of free speech; discrimination based on his age and gender; retaliation for filing charges of race and gender discrimination; and violations of his right to due process. This matter is before the Court for consideration of Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction. (ECF Nos. 12, 13.) For the reasons that follow, Plaintiff's Motions are **DENIED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff, who is proceeding *pro se*, is a student in his senior year at OU.[1] He is fifty-three years old. Plaintiff wishes to become a teacher and, until recently, was enrolled in OU's College of Education. Plaintiff maintains a 3.34 grade point average and, at the time he filed this action, had earned approximately 100 credit hours.

---

[1] The record reflects that Plaintiff is a transfer student from Wright State University and Clark State Community College. (*See* Pl.'s Aff. 2, ECF No. 12-1.)

On October 17, 2012, two OU faculty members, Defendants Colleen Ruggieri and Linda Rice, emailed the Credential Review and Candidate Program Board (hereinafter "Credential Review Board") concerning Plaintiff. Prof. Ruggieri taught Plaintiff in a young adult literature class. According to Prof. Ruggieri, Plaintiff demonstrated an "inability to collaborate with others." (Mot. Prelim. Inj. Ex. B., ECF No. 13-3.) Prof. Ruggieri stated that she had received a number of complaints from Plaintiff's class group members accusing Plaintiff of bullying, disruptive behavior, and a lack of respect towards others. (*Id.*) Within her email, Prof. Ruggieri also voiced concern regarding Plaintiff's contempt for young adult literature. She noted that Plaintiff had referred to such literature as "trash" or "garbage." (*Id.*) Although Prof. Ruggieri recognized that Plaintiff was not required to like the literature in question, she found his "lack of vision for providing pathways to literacy, especially for reluctant readers, [] alarming." (*Id.*) Based on these observations, Prof. Ruggieri challenged Plaintiff's qualification to become an educational profession, suggesting that his lack of ability to relate to others, and his lack of tact, would likely contribute to a negative learning environment for students. (*Id.*)

Prof. Rice's email to the Credential Review Board voiced similar concerns. Prof. Rice, the coordinator of OU's English Education Program, stated that although Plaintiff had only recently transferred to OU, she had already received reports from three faculty members indicating that Plaintiff's behavior was "unbecoming of a future teacher." (Mot. Prelim. Inj. Ex. C., ECF No. 13-4.) According to her email, Prof. Rice had reviewed written messages Plaintiff had sent to his professors and classmates. (*Id.*) Prof. Rice perceived these written communications as spanning "from rude to threatening." (*Id.*) Prof. Rice ultimately opined that Plaintiff should not be allowed to continue in the English Education Program based on his

2

inability to communicate effectively. (*Id.*)

On October 18, 2012, Defendant Marsha Dutton, the Chair of the Department of English, sent an email to Defendant John Henning, the Chair of the Department of Teacher Education, regarding her assessment of Plaintiff. (Mot. Prelim. Inj. Ex. A., ECF No. 13-2.) Prof. Dutton stated that she had received numerous faculty complaints concerning Plaintiff's behavior, with accompanying examples of written communications from Plaintiff to his professors and classmates. (*Id.*) Prof. Dutton noted that the written communications demonstrated "a consistent pattern of arrogant condescension, readiness to both take and cause offense, disdain for other people's opinions, and rejection of course offerings." (*Id.*) Based on her review of the complaints and written communications Prof. Dutton concluded that Plaintiff "is not a suitable candidate to become a teacher at any level . . . ." (*Id.*)

In providing these assessments of Plaintiff, the three faculty members each completed an evaluation rubric designed to assess the dispositions of educational professionals. (*See* Mot. Prelim. Inj. Exs. A, B, C.) The rubric is based on the College of Education's "Core Values & Dispositions" criterion. (*See* Mot. Prelim. Inj. Ex. J, ECF No. 13-11.) According to OU's College of Education these core values "are a set of fundamental principles and values that guide the practice and development of our faculty, students and staff." (*Id.*) The "Core Values" break into basic four categories with underlying, and more specific, bullet points. (*Id.*) The general categories are commitment to social justice (i.e. ideal of fairness in the belief that all students can learn); commitment to ethics; commitment to the well-being of students, families, and communities; and commitment to professional competence and ongoing professional development. (*Id.*) Each of the faculty members found Plaintiff's performance to be

3

unacceptable in several rubric categories. (Mot. Prelim. Inj. Exs. A, B, C.)

Within his Affidavit, Plaintiff challenges—in a conclusory manner—the veracity of the faculty members' charges against him. (Pl.'s Aff. 1, ECF No. 12-1.) Although Plaintiff does not submit detailed evidence contradicting the charges, he states in briefing that he provided "honest opinions" to instructors in response to questions. (Reply 4, ECF No. 17.) Moreover, Plaintiff asserts that he sent an email to classmates in Prof. Ruggieri's course stating that these students had "exhibited unprofessional conduct" by failing to attend group meetings. (*Id.*)

Plaintiff maintains that, based on the email charges of the faculty members, the Credential Review Board held a private meeting. (Pl.'s Aff. 1.) On November 2, 2012, Plaintiff filed charges of gender and age discrimination against Prof. Ruggieri with OU's Office of Institutional Equity.[2] (*Id.* at 2.)

On November 7, 2012, members of OU's faculty and administration met with Plaintiff to discuss their concerns and ask him questions. (Mot. Prelim. Inj. Ex. F, ECF No. 13-7.) The record reflects that following this meeting, Plaintiff received a written summary of the relevant concerns. (*Id.*) The Credential Review Board set, and invited Plaintiff to, a formal meeting on November 30, 2012 to discuss Plaintiff's qualifications to become a teacher. (*Id.*) Plaintiff provided a written submission to the Credential Review Board on November 27, 2012, but did not attend the November 30, 2012 meeting. (*Id.*)

At the November 30, 2012 meeting, the Credential Review Board—consisting of John Henning, Ann Paulins, Linda Rice, Guofang Wan, Barbara Nalazek, and Maureen

---

[2] Plaintiff states that he filed numerous charges of age and gender discrimination against OU employees during this general period.

4

Coon—concluded that Plaintiff did not "possess the necessary dispositions to become a successful teacher." (Mot. Prelim. Inj. Ex. E, ECF No. 13-6.) The Credential Review Board issued its decision on December 6, 2012. (Mot. Prelim. Inj. Ex. F.) The Board stated that its decision was based on concern from professors regarding Plaintiff's ability to interact, communicate, and build relationships with others. (*Id.*) Accordingly, the Credential Review Board stated that Plaintiff would not be permitted to continue in any teaching major that OU offered. (*Id.*) The Credential Review Board informed Plaintiff that he would still be permitted to complete a different major at OU and informed him of the right to appeal the decision to the Dean. (*Id.*)

Plaintiff appealed the decision of the Credential Review Board. (Mot. Prelim. Inj. Ex. G, ECF No. 13-8.) On December 12, 2012, OU Dean Renee Middleton upheld the December 6, 2012 decision based on the reasoning of the Credential Review Board. (Mot. Prelim. Inj. Ex. H, ECF No. 13-9.) OU has not allowed Plaintiff to register for College of Education classes during the Spring semester. (Mot. Prelim. Inj. Ex. I, ECF No. 13-10.)

## B. Procedural Background

Plaintiff filed this action on November 23, 2012, during the Credential Review Board's decision-making process. At the same time, Plaintiff filed a Motion for a Temporary Restraining Order to enjoin the Credential Review Board's November 30, 2012 meeting. The Court denied this Motion as premature.

Plaintiff filed the instant Motions on January 8, 2013. On that same day, the Court held a status conference pursuant to S.D. Ohio Civ. R. 65.1. The parties represented that OU's 2013 Spring semester began on January 14, 2013. Due to the need for expediency, the parties agreed

5

to resolution of the instant Motions based on written submissions. The matter is now ripe for review.

## II. STANDARD

The decision whether or not to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). In deciding whether to issue a temporary restraining order or preliminary injunction the Court applies the same basic factors. *Ne. Ohio Coal. for Homeless & Serv. Emp. Intern. Union, Local 1199*, 467 F.3d 999, 1009 (6th Cir. 2006). "Those factors are (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent [relief], (3) whether granting the [relief] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [relief]." *Id.*

"These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)). A stronger showing of likelihood of success is required as the other factors militate against granting relief, but less likelihood of success is required when they support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385–86 (6th Cir. 1995). At the same time, however, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *City*

6

*of Monroe*, 341 F.3d at 476.

Finally, "[t]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2011). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success."[3] *Id.*

### III. ANALYSIS

#### A. Likelihood of Success

As listed above, Plaintiff maintains that Defendants violated his First Amendment right to free speech; discriminated against him based on his gender and age; retaliated against him for filing charges of discrimination; and failed to afford him due process.[4] Accordingly, the Court must consider Plaintiff's likelihood of success on each of these sets of claims.

---

[3] Because Plaintiff is proceeding *pro se*, the Court has construed his filings liberally. *See Yagley v. Occupat'l Safety & Health Admin., U.S. Dep't of Labor*, 461 F. App'x 411, 414 (6th Cir. 2012) ("Of course, pro se litigants are to be afforded liberal construction of their pleadings and filings.").

[4] Within his Reply, Plaintiff also attempts to raise a breach of contract claim. (*See* Reply 2–3, 12–13.) Plaintiff's theory appears to be that he was contractually entitled to a more thorough review procedure during his removal from his teaching major. Plaintiff has not properly presented this claim to the Court. Specifically, Plaintiff failed to raise a breach of contract claim in his Complaint, Amended Complaint, or Motions for injunctive relief. Moreover, Plaintiff has failed to produce sufficient evidence showing that he was contractually entitled to further proceedings. At most, Plaintiff submits a flow chart, that sets forth steps for raising concerns with students. (*See* Ex. K, ECF No. 13-12.) Plaintiff provides little context for this flow chart, however, and it is not clear whether these steps are mandatory under all circumstances. Moreover, the Eleventh Amendment would bar any contractual claim against OU in federal court. *See Sefa v. Kentucky*, — F.3d —, 2013 WL 69337, at *1 (6th Cir. 2013) ("The Eleventh Amendment bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments.") (internal quotations omitted). Under such circumstances, Plaintiff has failed to demonstrate a strong likelihood of success on such a claim.

7

1. **First Amendment Claims**

Plaintiff first maintains that Defendants actions in removing him from the College of Education violated his First Amendment right to freedom of speech. Moreover, Plaintiff contends that the College of Educations "Core Values & Dispositions" is an unconstitutional speech code.

The United States Court of Appeals for the Sixth Circuit has recognized that freedom of speech claims in school settings "implicate[] two strands of law that occasionally run into each other." *Ward v. Polite*, 667 F.3d 727, 732 (6th Cir. 2012). On the one hand, "public schools are not expression-free enclaves." *Id.* Accordingly, to regulate speech because it occurs on school grounds school officials must "reasonably forecast[] that such displays could cause substantial disruption or materially interfere with the learning environment." *Defoe ex rel. Defoe v. Spiva*, 625 F.3d 324, 335 (6th Cir. 2010) (citing *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 514 (1969)). Moreover, "[t]he free-speech clause generally prohibits suppressing speech because of its message, and the Court has enforced that prohibition in the public school—indeed the university—setting." *Ward*, 667 F.3d at 733 (internal quotations omitted).

On the other hand, "[a] school need not tolerate student speech that is inconsistent with its basic educational mission . . . ." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988); *see also Ward*, 667 F.3d at 733–34 (applying *Hazelwood* to the university setting). Relatedly, "universities [] have considerable authority to control their own speech." *Ward*, 667 F.3d at 732. "Foremost among a school's speech is its selection and implementation of a curriculum—the lessons students need to understand and the best way to impart those lessons—and public schools have broad discretion in making these choices." *Id.* Accordingly,

8

"[p]ublic educators may limit 'student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns.'" *Id.* at 733 (quoting *Hazelwood*, 484 U.S. at 273.

The Sixth Circuit recently addressed the bounds of the right to free speech under similar circumstances. *See generally Ward*, 667 F.3d 727. In *Ward*, a university counseling student was removed from a counseling program because she requested that she not be assigned a gay client based on her religious conviction. *Id.* at 729–30. The Sixth Circuit held that the university was not entitled to summary judgment because there was an issue of fact as to whether the university's code of ethic barred the student's referral request. *Id.* at 735. At the same time, however, the Court reasoned that the student was not entitled to judgment as a matter of law because a jury could potentially credit the university's contention that the student "refused to adhere to a general and reasonable curricular requirement." *Id.* at 740–41. In reaching this determination, the Sixth Circuit stressed "respect[] for the latitude educational institutions—at any level—must have to further legitimate curricular objectives. All educators must be able to assure that participants learn whatever lessons the activity is designed to teach." *Id.* at 733 (internal quotations omitted); *cf also Keeton v. Anderson-Wiley*, 664 F.3d 865, 875 (11th Cir. 2011) (holding that a graduate student's participation in a clinical practicum was "a 'school-sponsored expressive activit[y],'" as those who receive counseling in the program and members of the general public 'might reasonably perceive [it] to bear the imprimatur of the school.'") (quoting *Hazelwood*, 484 U.S. at 271). Finally, with regard to the university setting, *Ward* recognized:

> Nor, it is worth adding, does the university setting invariably mean that educators

9

> have less discretion over their curriculum and class-related speech. It may be true that university students can handle more mature themes, but it is also true that they are not forced to be there, something that cannot be said about most students at public high schools. A prospective university student has the capacity to learn what a curriculum requires before applying to the school and before matriculating there. When a university lays out a program's curriculum or a class's requirements for all to see, it is the rare day when a student can exercise a First Amendment veto over them.

667 F.3d at 734.

In this case, Plaintiff fails to demonstrate a likelihood of success on his First Amendment free speech claims.[5] The Court recognizes that Plaintiff disagrees with OU faculty members' characterizations of his conduct. Nevertheless, Plaintiff has failed to adequately support his disagreement. Tellingly, Plaintiff fails to submit evidence regarding the actual content of his communications with faculty members and students. Although the reports of the faculty members on record do touch on the content of some of Plaintiff's speech, particularly his view of the young adult literature curriculum, on the whole, these reports focus on the hostile and disrespectful tone of Plaintiff's communications. Based on the current record, it does not appear that Defendants singled out Plaintiff because of his message and viewpoints. Rather, the evidence reflects that Plaintiff was removed from his teaching major because he failed to adhere to general and reasonable curriculum requirements. Most specifically, faculty member accounts indicate that Plaintiff's inability to communicate respectfully with his faculty and classmates violated the basic tenets of the College of Education's "Core Values & Dispositions." (*See* Mot.

---

[5] Within his briefing Plaintiff also references the Higher Education Act. This Act does contain a provision protecting student speech and associational rights. 20 U.S.C. § 1011a. Nevertheless, the Higher Education Act does not allow for a private right of action. *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006).

10

Prelim. Inj. Ex. J.) Relatedly, Plaintiff's inability to interact with others led faculty members and the Credential Review Board to believe that Plaintiff did not possess the necessary disposition for teaching. Finally, OU's College of Education has legitimate pedagogical concerns in assuring that future teachers have the ability to communicate with, and be respectful of, their students in spite of potential differences.

The Court is also not persuaded that the OU College of Education's "Core Values & Dispositions" is an unconstitutionally overbroad speech code. University policies designed to discipline students for speech may be unconstitutional under the First Amendment if the policy "is so broad as to chill the exercise of free speech and expression." *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995) (holding that a university's discriminatory harassment policy was unconstitutional on its face). In assessing the breadth of a policy, the Court must consider the amount of speech that the policy proscribes in relation to the policy's "plainly legitimate sweep." *Phelps-Roper v. Strickland*, 539 F.3d 356, 360 (6th Cir. 2008). In this case, the College of Education's "Core Values & Dispositions" are not designed to proscribe or punish speech and the Court foresees no danger that the standards will chill speech. Rather, the "Core Values & Dispositions" are guidelines for assessing the dispositions of potential teachers. Once again, a university has broad discretion in setting its curriculum. Under these circumstances, Plaintiff fails to demonstrate a strong likelihood of success on the merits of this theory.

**2.     Equal Protection Clause**

As detailed above, Plaintiff maintains—presumably pursuant to the Equal Protection Clause—that Defendants have discriminated against him based on gender and age. To the extent Plaintiff moves for preliminary injunctive relief based on such claims, he fails to demonstrate a

11

likelihood of success on the merits. There is no evidence on the current record that Plaintiff's removal from the College of Education was because of his race. For example, there is no evidence that Defendants treated Plaintiff differently from any other similarly situated student. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 252 (6th Cir. 2003) (affirming summary judgment because the plaintiff, a student at a medical school, "failed to provide any evidence whatsoever that she was treated differently from similarly situated students because of her race or gender").

### 3.  **Retaliation**

Plaintiff also contends that his removal was retaliation for filing charges of discrimination, and a lawsuit, against faculty members.

To establish retaliation Plaintiff must demonstrate that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010).

At this stage in the proceedings, Plaintiff has failed to demonstrate a likelihood of success on his retaliation claims. Even assuming that Plaintiff satisfies the other elements of retaliation, there is a lack of evidence demonstrating causation. The Court recognizes that Plaintiff's complaints against faculty members, and the filing of this lawsuit, occurred during the same basic time period as OU's decision-making process. Nevertheless, the record evidence suggests that OU officials would have removed Plaintiff from the College of Education even if he had not filed such charges. *See Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (explaining that a defendant may defeat causation by showing that his or her "decision would

12

have been the same absent the protected conduct"). As detailed above, the evidence currently before the Court indicates that OU officials removed Plaintiff from his teaching major based on their assessment of his teaching qualifications, and his inability to interact with others, not because he asserted discrimination claims against faculty members.[6]

### 4. Due Process

Finally, Plaintiff maintains that the decision-making process violated his constitutional rights to due process. Plaintiff specifically contends that he was entitled to a more complete notice process pursuant to OU's own internal process. Additionally, Plaintiff also asserts bias in the decision-making process, noting that the majority of the members of the Credential Review Board are Defendants in this action.

"Procedural due process requires that '[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.'"[7] *United States v. Green*, 654 F.3d 637, 652 (6th Cir. 2011). Procedural due

---

[6] For similar reasons, Plaintiff has failed to demonstrate a strong likelihood of success with regard to any First Amendment retaliation claim. Simply put, the current record reflects that Plaintiff was removed from his major not because of his views, but because of his unwillingness to abide by curriculum standards. *Cf. Keeton*, 664 F.3d at 878 (holding that Plaintiff failed to establish retaliation because "the record shows that [school] officials imposed the remediation plan, not because [the student] expressed her personal religious views regarding homosexuality, but because she was unwilling to comply with the ACA Code of Ethics. That this unwillingness to abide by [the school's] curriculum and her chosen profession's ethical standards initially became apparent through her writings and class discussions does not cloak it in First Amendment protection.")

[7] The Due Process Clause protects both procedural and substantive due process rights. *Ziss Bros. Const. Co., Inc. v. City of Independence, Ohio*, 439 F. App'x 467, 471 (6th Cir. 2011). "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'" *Green*, 654 F.3d at 652. Here, Plaintiff appears to bring procedural due process claims as opposed to substantive due process claims. Even considering substantive due process, however, Plaintiff

13

process generally requires notice and an opportunity to be heard. *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). When assessing the conduct of educational institutions, the law distinguishes between academic and disciplinary dismissals. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 89–90 (1978); *Hlavacek v. Boyle*, 665 F.3d 823, 826 (7th Cir. 2011). Within the disciplinary context, the Due Process Clause typically requires that a student receive "oral or written notice of the charges against him . . ., an explanation of the evidence . . . and an opportunity to present his side of the story." *Heyne v. Metro. Nashville Public Sch.*, 655 F.3d 556, 565 (6th Cir. 2011) (quoting *Goss v. Lopez*, 419 U.S. 565, 585 (1975)); *but see Horowitz*, 435 U.S. at 89 ("Even in the context of a school disciplinary proceeding, however, the Court stopped short of requiring a *formal* hearing . . . ."). For academic evaluations, however, due process only requires that school advise the student of his or her failures, explain the consequences, and that the school's decision be "careful and deliberate." *Bell*, 351 F.3d at 249 (citing *Horowitz*, 435 U.S. at 85). In *Horowitz*, the Supreme Court applied the academic standard because the relevant decision "rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal." 435 U.S. at 89–90.

The Due Process Clause also entitles students to an impartial decision-maker. *Heyne*, 655 F.3d at 567. At the same time, however, "due process is not necessarily violated when the school official who initiates, investigates, or prosecutes charges against a student plays a role in the decision . . . ." *Id.* (citing *Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526,

---

fails to demonstrate that OU officials engaged in conduct that shocks the conscious or otherwise deprived Plaintiff of a fundamental right.

14

529–30 (7th Cir. 1987)). Relatedly, the school context often makes it difficult, if not impossible, for the school to preclude the officials involved in the incident from the decision-making process. *Id.*

As with his other claims, Plaintiff has not demonstrated a strong likelihood of success with regard to his due process claim. First, the Court finds that the actions of OU officials was academic in nature. Specifically, Plaintiff's removal from the College of Education involved an academic judgment concerning whether Plaintiff possessed the necessary characteristics to become a successful teacher. Under these circumstances, Defendants satisfied due process requirements. The record reflects that OU officials informed Plaintiff of the issues faculty members had raised; gave Plaintiff multiple opportunities to respond to concerns, including a formal meeting that Plaintiff chose not to attend; and afforded Plaintiff an appeals process. Moreover, from the current evidence there is no reason to suspect that the Credential Review Board's decision was not careful and deliberate.

Additionally, Plaintiff does not have a strong likelihood of success on impartiality grounds. The Court recognizes that many of the decisionmakers on the Credential Review Board are also Defendants in this suit. Although this might raise a possible inference of animus or bias, the Court is not convinced, without more, that Plaintiff has a strong likelihood of success. Tellingly, OU faculty members and the Credential Review Board initiated the evaluation process prior to Plaintiff bringing this lawsuit. Moreover, Plaintiff was able to appeal the Credential Review Board's decision—and present his side of the story to—Dean Middleton, who is not a Defendant in this action.

**B.     Other Factors**

In addition to finding no strong likelihood of success, the other relevant factors do not weigh heavily in favor of injunctive relief. The Court recognizes that Plaintiff will lose time and resources if he is unable to attend education classes in the upcoming semester. Assuming Plaintiff is ultimately successful, however, monetary damages will be able to repair at least some of this injury. Moreover, although Plaintiff's readmission may not result in substantial harm to others, there is some concern in re-instituting a student whom faculty members have already found to be disruptive. Finally, the Court is not convinced that granting the requested relief will serve the public interest. Once again, the Court is reluctant to second-guess the judgment of academic professionals regarding the qualifications of teaching.

**IV.**

For the foregoing reasons, Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction are **DENIED**. (ECF Nos. 12, 13.)

**IT IS SO ORDERED.**


_1-22-2013_
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

16